*792 OPINION.
Trammell :
The petitioners contend that there should be allowed as a loss incurred in business in 1923 the amount of $13,187.99 representing the difference between the cost of the alteration of the premises at 140-142 West 30th Street, $58,187.99, and the fair and reasonable value of the alteration when completed, $45,000. The respondent contends that his action in determining that the entire amount of the $58,187.99 constituted a capital expenditure to be *793 exhausted over the life of tbe lease is correct and should be sustained. The respondent raises no question as to the business nature of the transaction. We think that the remodeling of the building to make it suitable for rental purposes, the petitioner being in thé real estate business, may fairly be said to be in connection with his business.
There is no controversy as to the capital nature of the expenditure. The only question is whether under the circumstances here presented the excess of the cost of the alteration over the fair and reasonable value of it when completed constitutes a loss incurred by the decedent in his business in 1923.
This contention of the petitioner must be denied. We have held that the fact that an asset may cost more than its real value or that a building may cost more to erect than it should cost does not give rise to deductible loss. The expenditure in the acquisition of such property is still cost and no loss in respect thereof may be recognized until the sale or other disposition of the property. See Radel Leather Manufacturing Co., 1 B. T. A. 1118; Triangle Realty Co., 12 B. T. A. 867, and cases therein cited. Edgar M. Carnrick, 21 B. T. A. 12.
The petitioners have cited the case of Union Bed & Spring Co. v. Gommissioner, 39 Fed. (2d) 383, in support of their view that they are entitled to the deduction claimed. But conceding for the sake of argument in this case that the views of the court in that case are correct and it is not necessary for us to express an opinion on the question as to whether or not we agree, there is not sufficient evidence in this case in any event to warrant the deduction. The record does not disclose that the difference between what the alterations and improvements should have cost or the fair market value when completed and what they actually cost represents a loss attributable to the parts destroyed and rebuilt and to the fact that wages were paid certain employees who did no work. Conceding in this case that any alterations or improvements once installed which were destroyed and which were rebuilt and any money which was paid to employees who did no work whatever constituted a loss, the record here does not disclose what that loss was.
It seems clear that the difference between what one contractor would estimate that a job should cost and what the work performed by another contractor actually cost is not a fair measure for determining a loss. We must recognize the fact that contractors of experience frequently disagree in their estimates of costs of a building or alterations and we think clearly that a taxpayer would not be entitled to a loss because one contractor would estimate that the improvements or alterations should cost one amount when another contractor would estimate different amounts.
*794 If the petitioner had shown the cost of these destroyed parts or had shown us the amount paid out to employees who did no work whatever, a different argument might have been presented in this case. But that situation is not before us.
So many different factors enter into the question of the fair and reasonable value of improvements, additions or alterations when completed that we do not think that such value should be used as a basis in determining whether a loss has been sustained. We must keep in mind the principle that the income-tax laws do not recognize a -deductible loss until the property has been sold or disposed of. A taxpayer may pay more for property than it is worth, but the law does not recognize this as a loss.
The remaining question is whether there should be allowed a deduction in 1923 of $5,000 representing the amount paid by the decedent on December 31 of that year to a sublessee for the cancellation of the sublease. The petitioners contend that the amount was an expense incurred by the decedent in the ordinary course of his business and therefore is allowable as a deduction. The respondent contends that the amount constituted a capital expenditure and is not allowable.
In Henry B. Miller, 10 B. T A. 383, we held that an amount paid by a lessor, who was the owner of property, to his lessee for the cancellation of a lease on the property constituted a capital expenditure and therefore was not deductible as a business expense. While in the instant case the decedent was not the owner, but was a lessee, we perceive no valid reason why our holding in the Miller case is not applicable here. His relation to his sublessee is substantially no different from the relationship of owner and lessee. The contention of the petitioners is accordingly denied. See also Shirley Hill Coal Co., 6 B. T. A. 935, and Columbia Theatre Co., 3 B. T. A. 622.
In their brief the petitioners for the first time take exception to the determination by the respondent as to the period over which the $5,000 paid for the cancellation of the lease is to be amortized or exhausted and also to the respondent’s treatment in 1924 of the un-amortized or unexhausted portion of the amount remaining at May 1, 1924, when the decedent assigned his lease to the Stonemor Realty Co., of which he was the sole stockholder. These additional matters were not issues in the case and while the pleadings were amended at the hearing they were not amended or offered to be amended so as to raise such matters. We therefore have not considered the additional matters presented by the brief.
While the petition alleged that the tax liability for 1922 was involved, no error was assigned as to the determination of such lia *795 bility. As no evidence was submitted with respect to the year 1922 and no reference made thereto in the brief of the petitioners, the respondent’s determination for that year is approved.
Reviewed by the Board.

Judgment will he entered under Rule 50.

Phillips dissents.