ESTATE OF F. S. BELL, DECEASED, LAIRD BELL, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANCES L. BELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 105150, 105151. Promulgated February 27, 1942.

*William N. Haddad, Esq.*, for the petitioners.
*John D. Kiley, Esq.*, for the respondent.

486

488

OPINION.

OPPER: It is not open to question that the interest of a life tenant limited to the right to receive income is taxable in full as such. *Irwin* v. *Gavit*, 268 U. S. 161. The Court there found "no doubt in our minds that if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute." The question we have to decide is whether the price paid in one sum for that interest, arrived at by the parties for all practical purposes by computing the present value of a life estate for the life of a person of the age of the life tenant, can be made to partake of the nature of capital and the gain be limited as though a capital transaction had taken place by the mere process of concentration and anticipation. We do not think it can.

In *Hort* v. *Commissioner*, 313 U. S. 28, the Supreme Court had before it a similar question. There, by way of a compromise settlement, the taxpayer had required its lessee to make a cash payment in order to obtain the cancellation of the lease. In reaching the conclusion that the entire amount received was taxable as ordinary income, the Court said of the definition of gross income:

* * * Plainly this definition reached the rent paid prior to cancellation just as it would have embraced subsequent payments if the lease had never been canceled. It would have included a prepayment of the discounted value of unmatured rental payments whether received at the inception of the lease or at any time thereafter. * * * So far as the application of § 22 (a) is concerned, it is immaterial that petitioner chose to accept an amount less than the strict present value of the unmatured rental payments rather than to engage in litigation, possibly uncertain and expensive.

The latter consideration, of course, need not concern us here. As we

have noted, the selling price was a close approximation of the discounted value of the probable future payments.

We are not unmindful of the observation in *Irwin* v. *Gavit, supra*, that "a gift of the income of a fund ordinarily is treated by equity as creating an interest in the fund"; nor that in *Blair* v. *Commissioner*, 300 U. S. 5, it was held that the assignment of income from a trust fund carried with it such a property interest in the fund that the transferee and not the transferor was taxable upon the income as received. Cf. *Harrison* v. *Schaffner*, 312 U. S. 579. But the statement quoted did not prevent the Court in the *Gavit* case from holding that all of the payments received were taxable as ordinary income; and in the *Blair* case the question was not whether income from a life estate could be saved from the burden of the income tax but only the person upon whom that payment should be charged. We think the point is sufficiently answered by a further quotation from *Hort* v. *Commissioner, supra:*

> The consideration received for cancellation of the lease was not a return of capital. We assume that the lease was "property", whatever that signifies abstractly. * * * Simply because the lease was "property" the amount received for its cancellation was not a return of capital, quite apart from the fact that "property" and "capital" are not necessarily synonymous * * *. Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22 (a) expressly characterizes as gross income, it must be regarded as ordinary income, and it is immaterial that for some purposes the contract creating the right to such payments may be treated as "property" or "capital".

See also *Swastika Oil & Gas Co.*, 40 B. T. A. 798, affd. (C. C. A., 6th Cir.), 123 Fed. (2d) 382.

Even more than in *Maass* v. *Higgins*, 312 U. S. 443, where it was said that "conceding that the ownership of a bond involves both the right to receive principal and the right to receive income, it is a highly artificial concept that an interest payment is a disposition *pro tanto* of the latter right * * *"; here transfer of the life estate, consisting only of the right to receive the income, should not be thought of as a diminution of capital merely because the income is lumped together and collected in a single payment.

These petitioners have no such right in the principal of the trust as would entitle them to any return of capital through deductions for the exhaustion or "shrinkage" of the interest represented by their life estates. *Codman* v. *Miles* (C. C. A., 4th Cir.), 28 Fed. (2d) 823; certiorari denied, 278 U. S. 654; *Milton H. Friend et al., Trustees*, 40 B. T. A. 768, 771; affd. (C. C. A., 7th Cir.), 119 Fed. (2d) 959; certiorari denied, 314 U. S. 673. The failure to give them an opportunity to recover any capital interest by offsetting a basis against the receipt of discounted income accordingly imposes no unfair burden. It is not as though they had bought the life interest, and thus had a

cost basis of that right by virtue of the purchase. Such basis in the trust corpus as might otherwise have existed has been transferred to the trust, Revenue Act of 1936, sec. 113, or to the remainderman. *Rodman E. Griscom*, 22 B. T. A. 979; *William H. Slack, Jr.*, 36 B. T. A. 105. It has not been lost. Its benefits will be recovered by one or the other of those transferees. If it is no longer available to petitioners, that is only because of the voluntary act by which they accomplished the transfer to the trust.

On the other hand the vendee of a life estate has a capital investment exhaustible by charges against income over its duration. *Elmer J. Keitel*, 15 B. T. A. 903; *Floyd M. Shoemaker*, 16 B. T. A. 1145. Cf. *Citizens National Bank of Kirksville, Mo.*, 42 B. T. A. 539; affd. (C. C. A., 8th Cir.), 122 Fed. (2d) 1011. That this purchaser happened also to be the remainderman can not affect the principle and may even lack significance. See *Elmer J. Keitel, supra*, p. 907. Certainly nothing in section 24 (b)[1] would stand in his way since its operation is limited to an "interest acquired by gift, bequest or inheritance". See Ways & Means Committee Report, Revenue Act of 1921, 67th Cong., 1st sess., H. Rept. 350, p. 12. If that is so and these petitioners escape the tax upon this income whether received in due course or by anticipation, the payment of tax upon it will have been completely avoided, and we can eliminate the distinction from the *Hort* case, which petitioners seek to draw when they say that:

\* \* \* The $140,000 paid by the tenant in that case was clearly income (and was presumably deductible by the tenant); and if it was not taxable to the landlord, it was not taxable to anyone. \* \* \*

We conclude that the payments received by petitioners in anticipation of their right to receive taxable income continued to partake of that character; that the transfer of their life estate had therefore the result merely of replacing taxable income; and that accordingly the consideration received was taxable in its entirety, as income from the life estate would have been.

We need not consider the further possible contention that assignment of the life estate to the owner of the remainder was in effect nothing more than a release of an outstanding interest and that it

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE. [Revenue Act of 1936.]

\* \* \* \* \* \*

(b) HOLDERS OF LIFE OR TERMINABLE INTEREST.—Amounts paid under the laws of any State, Territory, District of Columbia, possession of the United States, or foreign country as income to the holder of a life or terminable interest acquired by gift, bequest, or inheritance shall not be reduced or diminished by any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time, nor by any deduction allowed by this Act (except the deductions provided for in subsections (1) and (m) of section 23) for the purpose of computing the net income of an estate or trust but not allowed under the laws of such State, Territory, District of Columbia, possession of the United States, or foreign country for the purpose of computing the income to which such holder is entitled.

should not be treated as a sale or exchange. *Hale* v. *Helvering* (App. D. C.), 85 Fed. (2d) 819.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

LEECH, concurring: Since the facts here support the same distinction from those in *Lehman* v. *Commissioner*, 109 Fed. (2d) 99, as was drawn in *Marrs McLean*, 41 B. T. A. 1266, I concur. Cf. *Moses L. Parshelsky*, 46 B. T. A. 456.

---

VAN FOSSAN, dissenting: I am of the opinion that the sale of the life interests in the two trusts should be treated as a sale of property and taxed as capital gain.

Under *Blair* v. *Commissioner*, 300 U. S. 5, the life interest so created was "present property alienable as any other" and the assignment of such a beneficial interest is the assignment of the "right, title and estate in and to property." There would seem to be no ground to question that the sale for cash and its equivalent of the life interest was a sale of property. See also *Commissioner* v. *Field*, 42 Fed. (2d) 820.

The property was acquired by virtue of transfers in trust after December 31, 1920. Section 113 (a) (3) is, therefore, pertinent and petitioners' bases are the same as those of the grantors of the trusts, adjusted as provided in section 113 (b). The parties stipulate that the adjusted bases of the grantors for the Thorncroft stock, as of the date of creating the trusts, are $461,327.96 as to Frederic S. Bell and $461,315.47 as to Frances L. Bell.

The life interests which were sold being property held by the taxpayers and their grantors under the trusts, for more than ten years (section 117 (c) (2)) and not falling in a category excluded from the capital gains provisions, it follows that the profit is to be treated as capital gain, taxable as such.

*Hort* v. *Commissioner*, 313 U. S. 28, on which the author of the prevailing opinion relies, is not authority to the contrary. That case involved the relinquishment of a lease in consideration of receipt of $140,000. The payment was held to be income because the relinquishment of future rents was in return for present payment. No sale or disposition of property was involved. The lessor merely got rid of the lease and was free to lease again. The payment was clearly a substitute for the rentals reserved in the lease. In the instant case the property was sold. The statute provides the basis for determining gain. To deny the application of the statute and hold the entire proceeds ordinary gain brings about a result which is at once unjustified in law and arbitrary in fact.