THE TRUSTEE CORPORATION, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 91353.   Filed June 2, 1964.

*Alfred H. Moses*, for the petitioner.
*Robert S. Bersch*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income
tax against the petitioner for the taxable years ended May 31, 1956,
and May 31, 1957, in the respective amounts of $1,471.69 and $5,025.28.

The sole issue presented is whether the amount paid by the petitioner
to its lessee to obtain cancellation of the lease is properly amortizable
over the term of a new lease entered into with a different tenant for
a substantially longer term or over the unexpired term of the canceled
lease.

#### FINDINGS OF FACT

Some of the facts are stipulated and are incorporated herein by this
reference.

The petitioner was incorporated under the laws of the State of
Tennessee on June 12, 1952, its principal business being the ownership
and management of real estate for profit.   The petitioner keeps its
books and files its returns on an accrual method of accounting and on
the basis of a taxable year ending May 31.   It timely filed income tax
returns for the taxable years ended May 31, 1956 and 1957, with the
district director of internal revenue at Nashville, Tenn.

The petitioner's capital stock was initially issued to the following
persons in the following amounts:

|  | Shares |
|---|---|
| Guilford Glazer | 9. 600 |
| Lillian L. Glazer | 7. 200 |
| Jerome S. Glazer | 7. 200 |
| Gertrude G. Cohen | 5. 596 |
| Morris Glazer | 3. 468 |
| Besse G. Hite | 3. 468 |
| Bella G. Leeds | 3. 468 |
| Total | 40. 000 |

All of the above shareholders with the exception of Lillian L. Glazer are the children of Ida B. Glazer. Lillian L. Glazer is the wife of Ida B. Glazer's son, Louis Glazer.

In 1946 Ida B. Glazer, for a total purchase price of $70,000, acquired a tract of land of approximately 6½ acres, together with improvements, located at 2100 Ailor Avenue, Knoxville, Tenn. The vendor was in no way related to Ida B. Glazer or to members of her family.

The Ailor Avenue property is located in the western part of Knoxville in an industrial area a short distance from the main tracks of the Louisville and Nashville Railroad Co. and the belt line of the Southern Railroad Co. The property was serviced by a double railroad siding.

The prior owner had utilized the Ailor Avenue property in a marble milling operation, which had ceased several years prior to 1946. At the time of Ida B. Glazer's purchase the improvements on the premises included a 125-foot by 37-foot rectangular building, an adjoining overhead craneway, and a second building which was adjacent to the Southern Railroad's right-of-way.

By lease agreement entered into on February 26, 1946, Ida B. Glazer leased the Ailor Avenue property to Glazer Steel Corp. for a term of 5 years beginning April 1, 1946, at an annual rental of $7,500 plus real estate taxes, assessments, and insurance. The lease agreement provided for a renewal, at the option of the lessee, for an additional term of 5 years at a rental to be agreed upon. It also contained, *inter alia*, the following provision:

14(a) That, except as herein otherwise provided, the Lessee shall not assign, or mortgage this lease, or any estate, or interest, therein, without the written consent of the Lessor first had and obtained, but the Lessee may sublet, or sublease, the demised premises, or any portion, or portions, thereof.

Glazer Steel Corp. was incorporated under the laws of the State of Tennessee on February 21, 1946, with its capital stock being issued to the following persons in the following amounts:

| | *Shares* |
|---|---|
| Guilford Glazer, president | 37 |
| Louis A. Glazer, vice president and secretary | 30 |
| Jerome S. Glazer, vice president and treasurer | 30 |
| I. B. Cohen, vice president | 23 |
| Total | 120 |

I. B. Cohen is the husband of Ida B. Glazer's daughter, Gertrude.

Glazer Steel Corp. engaged in buying, selling, warehousing, and fabricating steel in Knoxville, Tenn., each of its stockholders being active in its management. It also bought and sold scrap metals. Commencing in 1949, it also operated a steel service center in New Orleans, La.

Glazer Steel Corp. made improvements upon the Ailor Avenue property necessary for use in its business. The existing overhead craneway was extended and about half of it was enclosed by a new building used as part of the fabricating shop. It also constructed a warehouse and machine shop, a modern brick office building, and miscellaneous service buildings. A marshy portion of the property was filled in and the entire property was generally placed in suitable shape as a factory site. Apart from initial costs incurred in cleaning up the property and the costs of maintenance and repairs, it spent approximately $300,000 for capital improvements during the period that it leased the property.

Under the lease agreement between Ida B. Glazer and Glazer Steel Corp., the lessee was obligated, at its own expense, to maintain all buildings and improvements, presently existing or subsequently erected, in good and substantial order and repair.

By deed dated December 23, 1949, Ida B. Glazer conveyed the Ailor Avenue property, subject to the existing lease with Glazer Steel Corp., to Guilford Glazer, trustee, for the benefit of Besse G. Hite, Morris Glazer, Lillian B. Glazer, Bella G. Leeds, Gertrude G. Cohen, Guilford Glazer, and Jerome S. Glazer. Thereafter, on April 21, 1950, Guilford Glazer, trustee, entered into an agreement with the Tennessee Valley Authority and Glazer Steel Corp., whereby the lease previously entered into between Glazer Steel Corp. and Ida B. Glazer was modified to exclude a portion of the Ailor Avenue property which was not then being utilized by Glazer Steel Corp. The excluded portion was then leased to the Tennessee Valley Authority for a term of 10 years.

By agreement dated June 15, 1950, between Guilford Glazer, trustee, and Glazer Steel Corp., the lease was renewed for the term of 3 years commencing April 1, 1951, but there was excluded the portion under lease to the Tennessee Valley Authority. The agreed annual rental was $6,000, plus payment of all real estate taxes and assessments and all fire, casualty, public liability, and comprehensive coverage insurance that might be required by the lessor. This lease agreement incorporated by reference some of the general provisions of the 1946 agreement, including the provision granting Glazer Steel Corp. the right to sublet or sublease the property or any portion thereof.

By agreement dated December 24, 1951, Guilford Glazer, trustee, and Glazer Steel Corp. modified the lease agreement entered into on June 15, 1950, to provide for an increase in rental to $7,800 per annum and to extend the term of the lease for an additional 10-year period commencing April 1, 1954, with no provision for further renewal.

At the time this lease modification and extension agreement was entered into, Glazer Steel Corp. planned to spend a considerable

amount of money in expanding the facilities and, for this reason, desired a longer term than that provided by the lease dated June 15, 1950.

Under the terms of the original lease any buildings or improvements which might be erected on the leased premises were to immediately become a part of the freehold and the sole and absolute property of the lessor for all purposes (except in the event of condemnation). This provision was incorporated, by reference, in the lease of June 15, 1950. Following the execution of the lease modification and extension agreement dated December 24, 1951, Glazer Steel Corp. spent approximately $200,000, of the total of $300,000 previously mentioned, for capital improvements to the property.

On July 1, 1952, Guilford Glazer, trustee, deeded the Ailor Avenue property to the petitioner and assigned to it the lease agreement, as modified and extended, between himself, as trustee, and Glazer Steel Corp.

In February 1955, Glazer Steel Corp. purchased the stock of I. B. Cohen and held it as treasury stock.

In the fall of 1955 the board of directors of Glazer Steel Corp. included Guilford Glazer, Louis A. Glazer, Jerome S. Glazer, and Ida B. Glazer. At that time the Glazer Steel Corp. was operating the Ailor Avenue property principally in connection with its steel fabricating business, with Louis A. Glazer being in charge thereof. At that time Louis A. Glazer was also active in the operation of two corporations engaged in the general contracting business, Guilford Glazer was devoting most of his time to the construction and development of two shopping centers in Oak Ridge, Tenn., and Cincinnati, Ohio, and Jerome S. Glazer was active in directing Glazer Steel Corp.'s steel service center in New Orleans, La.

In the fall of 1955, Guilford Glazer, Louis A. Glazer, and Jerome S. Glazer, who owned all of the outstanding capital stock of Glazer Steel Corp. and constituted a majority of its board of directors, concluded that, although the business of Glazer Steel Corp. had been successful,[1] they could derive a greater profit by devoting their time individually to real estate promotions and other ventures rather than continuing the operation of the corporation's business in Knoxville. They therefore decided to discontinue the Knoxville steel operations of the Glazer Steel Corp. provided such corporation could advantageously dispose of its Knoxville facilities.

At that time Guilford Glazer contacted representatives of Allied Structural Steel Cos. in Chicago, Ill., with a view toward that company's taking over Glazer Steel Corp.'s Knoxville operations. That

[1] In each of the years 1946 through 1955, except 1952, Glazer Steel Corp. operated at a profit. For the year 1955, it had a net profit after Federal income taxes of approximately $110,000.

company was then a partnership composed of three corporations in no way related to petitioner, Glazer Steel Corp., or any members of the Glazer family.

Discussions were had with representatives of Allied Structural Steel Cos. with respect to the leasing of the Ailor Avenue property. Allied Structural Steel Cos. first offered to sublease the premises from Glazer Steel Corp. for a period of 2 or 3 years. However, this offer was rejected by the board of directors of Glazer Steel Corp. which was not interested in subleasing for less than the remaining term of the existing lease. It was finally agreed that Allied Structural Steel Cos. would lease the premises for a period of 20 years through a new corporation to be formed. Consideration was given to whether the transaction would be carried out by a sublease from Glazer Steel Corp. for the remaining period of the existing lease and a simultaneous lease by petitioner for a sufficient additional time to make up the 20 years or by a lease from the petitioner for 20 years, after a cancellation of the existing lease. Representatives of Allied Structural Steel Cos. indicated that they did not care who the lessor might be so long as they obtained unrestricted use of the premises. It was finally decided that the transaction would be carried out by canceling the existing lease and having the petitioner execute a 20-year lease with the corporation to be organized by Allied Structural Steel Cos.

Allied Structural Steel Corp. of Tennessee (hereinafter referred to as Allied) was organized by Allied Structural Steel Cos. to enter into the lease.

In negotiations between the petitioner and Glazer Steel Corp. for the cancellation of the then existing lease between them the stockholders of Glazer Steel Corp. wanted to make certain that such corporation would recover the cost of leasehold improvements which had been made. A certified public accountant was called in by both corporations to fix a price for cancellation of the existing lease which would be fair to all concerned. At the conference at which the price was agreed upon, Harry Hite, an attorney, who was the husband of Besse G. Hite, represented the petitioner.

By agreement dated November 14, 1955, between petitioner as first party and Glazer Steel Corp. as second party, the existing lease agreement between the two corporations was canceled, effective December 31, 1955. This agreement provides in pertinent part as follows:

WHEREAS, the First Party is the assignee (Lessor) under a certain lease agreement dated the 15th day of June, 1950, between Guilford Glazer, Trustee, as Lessor, and Glazer Steel Corporation, as Lessee, the extended term of which ends on the 31st day of March, 1964 * * * and,

WHEREAS, the First Party has an opportunity to lease a portion of the premises * * * to the Allied Structural Steel Corporation under a proposed lease agreement whereby the First Party will receive an annual rental of Forty-five Thousand Dollars ($45,000.00) over a period of twenty (20) years, and,

WHEREAS, the First Party, in order to avail itself of the benefits of the said proposed lease with the Allied Structural Steel Corporation, is desirous of cancelling its lease * * * with the Second Party and as an inducement for the cancellation thereof has offered to pay the Second Party the sum of Twenty Thousand Dollars ($20,000.00) annually for a period of ten (10) years in the manner hereinafter agreed upon, and,

WHEREAS, the Second Party is willing and has agreed to accept the said offer of the First Party;

NOW, THEREFORE, THIS AGREEMENT:

1. That for and in consideration of Twenty Thousand Dollars ($20,000.00) annually, to be paid for a period of ten (10) years, payable in equal monthly installments of Sixteen Hundred Sixty-Six Dollars and Sixty-Seven Cents ($1,666.67) each, beginning on the 1st day of January, 1956, by the First Party to the Second Party, the Second Party does hereby agree to immediately cancel the lease hereinabove referred to * * *, such cancellation to become effective as of the 31st day of December, 1955, and to surrender the premises therein described unto the First Party as of the date of such cancellation.

On November 14, 1955, petitioner gave Glazer Steel Corp. its promissory note in the amount of $200,000 payable monthly at the rate of $1,666.67 for a period of 10 years commencing January 1, 1956.

The stockholders of Glazer Steel Corp. and of petitioner were as follows on November 14, 1955:

| | Shares of Glazer Steel Corp. | Shares of petitioner |
|---|---|---|
| Guilford Glazer | 37 | 11.696 |
| Louis A. Glazer | 30 | 1.750 |
| Jerome S. Glazer | 30 | 8.950 |
| Lillian L. Glazer | | 7.200 |
| Morris Glazer | | 3.468 |
| Besse G. Hite | | 3.468 |
| Bella G. Leeds | | 3.468 |
| | 97 | 40.000 |

By agreement dated November 16, 1955, petitioner leased the land and buildings formerly leased to Glazer Steel Corp. (with the exception of the modern office building which had been constructed by Glazer Steel Corp. on the leased premises) to Allied for a term of 20 years commencing January 1, 1956, at a fixed rental of $3,750 per month, the lessee agreeing to maintain the property and to pay all taxes, assessments, and water rates imposed with respect to the leased property. The lease agreement contained no provision requiring petitioner to renovate or improve the premises as a condition to the leasing of the property.

Following the cancellation of its lease agreement with the petitioner, Glazer Steel Corp. vacated the land and other buildings on the Ailor Avenue property, except the office building which it continued to use as its general offices for about 3 years, when it moved such offices to New Orleans, La., where it was conducting steel operations. As of

January 1, 1956, it ceased all steel operations in Knoxville, transferring its work in process and a portion of its inventory and shop supplies to Allied. Its Knoxville fabricating equipment was transferred to three corporations controlled by Guilford Glazer, Louis Glazer, and Jerome S. Glazer, respectively, which then leased such equipment to Allied for a 20-year term.

In its Federal income tax return for the taxable year ended May 31, 1956, the petitioner claimed a deduction of $10,101, representing a portion of the total cost incurred by it in obtaining the cancellation of the lease agreement with Glazer Steel Corp., such amount being computed by dividing the total cost of $200,000 by 99, representing the number of months remaining in the unexpired term of the canceled lease, and multiplying the quotient by 5, the number of months remaining in its taxable year ended May 31, 1956. In its return for its taxable year ended May 31, 1957, it claimed a similar deduction in the amount of $24,242 computed for its full taxable year.

The respondent in the notice of deficiency determined that the $200,000 cost should be amortized over a period of 20 years commencing January 1, 1956, this being the term of the new lease between petitioner and Allied. He therefore disallowed $5,934.33 of the amount claimed for the taxable year ended May 31, 1956, and $14,242 of the amount claimed for the fiscal year ended May 31, 1957.

The petitioner could have had the benefit of a lease with Allied for the last 11¾ years of the 20-year period of occupancy sought by Allied Structural Steel Cos. even if the existing lease between petitioner and Glazer Steel Corp. had not been canceled.

### OPINION

Both parties recognize the rule that generally an amount paid by a lessor to a lessee for cancellation of a lease prior to the expiration of its term is a capital expenditure made in order to obtain possession of the premises and that it is, therefore, deductible over the unexpired term of the canceled lease. *Henry B. Miller*, 10 B.T.A. 383; *Harriet B. Borland*, 27 B.T.A. 538; *Clara Hellman Heller Trust No. 7610*, 7 T.C. 556, reversed sub nom. *Wells Fargo Bank & Union Trust Co.* v. *Commissioner*, (C.A. 9) 163 F. 2d 521; *Laurene Walker Berger*, 7 T.C. 1339; and *Bernard A. Rosenblatt*, 8 T.C. 1245.

The petitioner contends that all it acquired for its $200,000 payment to Glazer Steel Corp. was the right to the immediate possession of the Ailor Avenue property, which possession would otherwise have been deferred for 8¼ years, that, therefore, the general rule applies, and that the $200,000 should be amortized and deducted over such 8¼-year period.

The respondent contends that where the purpose of canceling the old lease is to enable the lessor to acquire a new asset, the considera-

tion paid by the lessor must be regarded as the cost of obtaining the new asset and that such cost must be amortized over the life of such new asset, citing *Business Real Estate Trust of Boston*, 25 B.T.A. 191, and *M. & F. Holding Corporation*, 26 B.T.A. 504. It is his contention that the petitioner paid the $200,000 to Glazer Steel Corp. for cancellation of the existing lease in order to obtain the more favorable 20-year lease with Allied, that such amount constituted a cost of the new lease, and that, therefore, such amount must be amortized and deducted over the 20-year period of the new lease. It should be added that the respondent does not contend that any of the transactions were not at arm's length.

Under the particular facts here presented, we see no reason for departing from the general rule that the amount paid for cancellation of the old lease should be amortized and deducted over the remaining life of such old lease.

At the outset it should be stated that the petitioner was not required to, and did not, make any improvements to the property. Cf. *Business Real Estate Trust of Boston*, *supra*, in which it was held that the cost of cancellation of an old lease constituted a cost of a new building erected on the property for lease to a new tenant and that such cost was amortizable and deductible over the life of the building.

While it is true, of course, that as a result of the cancellation of the old lease the petitioner was enabled to enter into the lease with Allied for the full 20-year period, the evidence establishes that the benefit resulting to the petitioner from its payment of $200,000 to obtain the cancellation was only the increased rental for the first 8¼ years of the new lease,[2] since even if the old lease had not been canceled the petitioner was assured of a lease with Allied for the last 11¾ years of the 20-year term.

All the stock of the Glazer Steel Corp. was owned by three brothers, Louis, Jerome, and Guilford Glazer, and they also owned the majority interest in the petitioner. They desired to discontinue the Knoxville steel operations of the Glazer Steel Corp. Accordingly, Guilford Glazer contacted Allied Structural Steel Cos. with a view to having that company take over all the steel facilities located in Knoxville. Consideration was given to having Glazer Steel Corp. enter into a sublease with Allied Structural Steel Cos. for the remaining 8¼ years of the old lease and having the petitioner simultaneously enter into a lease with that company for an additional 11¾ years to take effect upon the expiration of the 8¼ years. Allied Structural Steel Cos. was willing to carry out the transaction in that manner, provided they obtained unrestricted use of the premises. Such was the substance

---

[2] Over the remaining 8¼ years of the old lease the petitioner would have received rental in the amount of $64,350, whereas under the new lease it would receive rental of $371,250 over the first 8¼ years, an increase of $306,900.

of the testimony of Louis Glazer, who was vice president and secretary of Glazer Steel Corp. He also indicated that the reason that the transactions were not carried out in that manner was because Glazer Steel Corp. was an operating company and was not in the leasing business, and that such company's principal concern was to recover the cost of improvements which it had placed upon the leased premises. His testimony was not controverted in any manner.

Under these circumstances it is clear that the petitioner could have had the benefit of the favorable lease with Allied for the last 11¾ years of the 20-year term even if the existing lease had not been canceled. Obviously it was to the interest of the three Glazer brothers, who controlled both Glazer Steel Corp. and the petitioner, to enter into satisfactory arrangements with Allied, whatever the form adopted.

It follows, therefore, that the payment of the $200,000 was not made in order to vest in the petitioner the benefits of the favorable lease with Allied over the last 11¾ years of the lease, but was made in order that the petitioner might regain possession of the premises in order to enter into the full 20-year lease with Allied and thereby obtain the benefits of such favorable lease over the remaining term of the existing lease, namely, 8¼ years. We hold that the amount of $200,-000 is amortizable and deductible ratably over such period of 8¼ years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TIETJENS, *J.*, dissenting: I would conclude that what the parties actually did in this case was to pay $200,000 for the purpose of canceling the existing lease and obtaining a new 20-year lease, a new asset. The cost should be amortized over the term of the new lease.